UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re:<br>    SHARON S. BRAINARD<br>    *Debtor.* | Case No.: 13-22251 (AMN)<br>Chapter 7<br><br>Re: ECF No. 6, 14, 32, 36, 44, 82, 147 |
| MCKEON LAW GROUP, LLC,<br>    *Plaintiff*<br>v.<br>SHARON S. BRAINARD,<br>    *Defendant* | Adv. Pro. No.: 13-2046 (AMN)<br><br>Re: AP-ECF No. 1 |

**MEMORANDUM OF DECISION AND ORDER
SUSTAINING, IN PART, OBJECTIONS TO CLAIMS
OF EXEMPTION AND SCHEDULING STATUS CONFERENCE**

On October 31, 2013 (the "Petition Date"), the debtor, Sharon S. Brainard ("Debtor"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code, commencing the underlying bankruptcy case (the "Main Case"). ECF No. 1.[1] Soon thereafter, McKeon Law Group, LLC commenced adversary proceeding number 13-2046 (the "Adversary Proceeding"). The court addresses only part of the parties' disputes in this Memorandum of Decision and Order, but because this decision will implicate the remaining issues in both the Main Case and the Adversary Proceeding, it is being filed in both cases.

---

[1] The court assumes the reader's familiarity with the docket of both the Main Case and the Adversary Proceeding. Documents filed in the Main Case are denoted, "ECF No. ___", and documents filed in the Adversary Proceeding are denoted, "AP-ECF No. ____."

1

The dispute addressed by this decision revolves around the Debtor's assertion of exemptions in certain money she was paid pursuant to a Qualified Domestic Relations Order, or QDRO, entered in her state court divorce case during the year before the Petition Date.  In short, the Debtor filed numerous exemptions pursuant to various provisions of § 522 of the Bankruptcy Code[2] regarding an individual retirement account (the "IRA") that she scheduled as being worth $32,000.  The Debtor established the IRA two months prior to the Petition Date using funds from her ex-husband's retirement account that were paid to her pursuant to the QDRO.  Relevant here, both the Chapter 7 Trustee, Thomas C. Boscarino ("Trustee") and Maria McKeon and the McKeon Law Group, LLC (collectively, "Creditor"), objected to some or all of the exemptions.

In her Amended Schedule C – Property Claimed as Exempt, the Debtor claimed that the IRA was not property to be distributed to her creditors because the IRA was exempt in whole, or in part, under Bankruptcy Code §§ 522(a)(3)(C), (a)(4),[3] (d)(5), (d)(10)(D), (d)(10)(E), (d)(11)(E) or (d)(12).[4]  ECF No. 32.

The Trustee objected to all the claimed exemptions regarding the IRA except the so-called "wild card" exemption pursuant to § 522(d)(5) that allows any property to be exempted from bankruptcy creditors up to the amount of $12,725.00.[5]  ECF No. 36.

---

[2]  Title 11, United States Code is referenced throughout as the Bankruptcy Code.
[3]  The court notes the Debtor's Amended Schedule C appears to contain a typographical error, in that the Debtor purports to assert an exemption in the IRA under § 522(a)(3)(C) and § 522(a)(4), two non-existent sections of the Bankruptcy Code.  The court assumes the Debtor is referring to § 522(b)(3)(C) and § 522(b)(4).
[4]  In her Amended Schedule C, the Debtor also asserted that the IRA was not property of the estate under § 541(c)(2), and also cited to Conn. Gen. Stat. § 52-321(a).  The court does not reach those arguments at this time.
[5]  This was the wild card exemption amount in 2013.  The amount is adjusted from time to time.  11 U.S.C. § 104.  In her Amended Schedule C, the Debtor claimed a $9,251.18 exemption in the IRA under § 522(d)(5).  ECF No. 32.

2

The Creditor objected to all of the claimed exemptions relating to the IRA, as well as exemptions of other property not relevant to this decision.  ECF No. 82.

The pertinent facts are not in dispute.  The Divorce Decree required the Debtor's ex-husband to transfer a portion of a retirement fund (the "Retirement Fund Distribution") held in his name to the Debtor.[6]  Pursuant to the QDRO, the transfer was completed on or about September 30, 2013, when the Debtor deposited $62,362.12 in an account held at People's United Bank.  AP-ECF No. 103, ¶ 3.  At some point, the Debtor spent approximately $13,865.00 of the Retirement Fund Distribution on personal expenses including, without limitation, child related expenses, attorneys' fees, car related expenses and a life insurance premium.  AP-ECF No. 103, ¶ 4.  On or about October 4, 2013, the Debtor established the IRA at Fidelity Bank using approximately $40,000.00 of the Retirement Fund Distribution.  AP-ECF No. 103, ¶ 5.  After the Petition Date, on or about December 18, 2013, the Debtor withdrew $1,600.00 from the IRA to pay for a broken water heater.[7]  AP-ECF No. 103, ¶ 6.  The Debtor's post-petition transfer of pre-petition funds was followed by a court order entered on December 19, 2013, essentially freezing the IRA until further order of the court.  AP-ECF No. 10.  Pursuant to AP-ECF No. 10, the IRA was valued at $30,700.00 as of December 19, 2013.

The limited questions the court addresses in this Memorandum of Decision are whether the Debtor is entitled to claim an exemption pursuant to: § 522(d)(10)(D) (alimony, support or maintenance to the extent reasonably necessary for the support of

---

[6]  The court refers to all of the funds received by the Debtor from her ex-husband's pension fund as the Retirement Fund Distribution.  However, the objections by the Creditor and the Trustee relate only to the funds from the Retirement Fund Distribution that were placed in the IRA.
[7]  The actual balance of the IRA as of the Petition Date is unclear to the court.

3

a debtor and any dependent of a debtor), § 522(d)(5) ("wild card" exemption), and § 522(d)(12) (retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under specific sections of the Internal Revenue Code of 1986).

Previously, a Scheduling Order entered requiring the filing additional documents and supplemental briefing on the question of whether, and to what extent, the IRA should be found to be "alimony, support, or separate maintenance" for purposes of § 522(d)(10)(D). ECF No. 147. In response, the Debtor filed a copy of the divorce decree entered in *Sharon S. Brainard v. Peter Brainard, Jr.*, docket number HHD-FA-12-4060178-S, ("Divorce Decree"). ECF No. 149. The Debtor and the Creditor each filed supplemental briefing. ECF No. 150, 152.

To begin, the parties objecting to a debtor's exemption – here, the Creditor and the Trustee – bear the burden to demonstrate that the claimed exemption is improper by a preponderance of the evidence. Fed.R.Bankr.P. 4003(c); *In re Stanley*, 461 B.R. 161, 165 (Bankr. E.D.N.Y. 2011). The Creditor challenges the exemption of the IRA on two grounds. First, the Creditor argues the IRA was funded by a property settlement payment rather than by a payment of alimony, support or maintenance, and so is not entitled to protection under § 522(d)(10)(D). Because the Retirement Fund Distribution would never qualify as exempt alimony, support or maintenance, – the argument goes – the proceeds that made their way to the IRA similarly cannot be exempt as alimony, support or maintenance. Second, the Creditor argues the creation of the IRA was improper because the funds were never part of an ERISA qualified, or tax exempt, fund and it was a mistake for the financial institution to allow the account to be opened as a

4

rollover individual retirement account. The court does not address the second argument at this time.

Thus, the task for the court at this juncture is to discern whether or not the Retirement Fund Distribution was intended to be alimony, support or maintenance, or rather, a property settlement.

Because "'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States,'" it would seem to follow that the question of whether the Retirement Fund Distribution was alimony or a mere property settlement, should turn on state law. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (*quoting In re Burrus*, 136 U.S. 586, 593-94 (1890)). The Creditor further argues the Rooker-Feldman doctrine prevents this court from making its own determination about the nature of the Retirement Fund Distribution here.

However, it is well established that the Bankruptcy Court may apply its own interpretation to the state court's award of property in a divorce action to determine whether such property constitutes "alimony" under § 522(d)(10)(D). "Although a bankruptcy judge may consult state law for guidance as to whether [property] is actually in the nature of alimony, maintenance or support, that concept is necessarily one founded in, and resolved through an application of, federal bankruptcy law." *In re Nero*, 323 B.R. 33, 37 (Bankr. D. Conn. 2005) (*citing Brody v. Brody (In re Brody)*, 3 F.3d 35, 39 (2d Cir. 1993)). Bankruptcy courts walk a fine line, because "[a]lthough it is true that '[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law', it is also true that 'Congress could not have intended

5

that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established laws of the States.'" *Forsdick v. Turgeon*, 812 F.2d 801, 802-03 (2d Cir. 1987) (*first quoting* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 364 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6320, *then quoting Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981)).

The same standards that determine whether a debt is non-dischargeable alimony apply in a case determining whether funds are exempt as alimony. *In re Virgili*, No. 09-31897 (LMW), 2012 WL 694318, *11 (Bankr. D.Conn. March 1, 2012) (*citing In re Joseph*, 157 B.R. 514, 518 (Bankr. D.Conn. 1993) ("There is no readily apparent reason why a bankruptcy court should use different standards in reviewing alimony awards in the nondischargeability instance and in the exemption instance.")). "[I]n determining whether an obligation arising out of a divorce decree or separation agreement is dischargeable under the Code, the court must 'look beyond the label attached to an obligation' to examine its true nature." *In re Edwards*, 162 B.R. 83, 84 (D.Conn. 1993) (*quoting In re Gianakas*, 917 F.2d 759, 762 (3rd Cir. 1990)); *cf.* 11 U.S.C. § 101(14A) (defining a "domestic support obligation" as including a debt "in the nature of alimony, maintenance or support . . . without regard to whether such debt is expressly so designated").

Although the court must perform an independent inquiry of the facts and circumstances to answer the question, the court turns first to the language of the Divorce Decree itself. *Nero*, 323 B.R. at 38. Only if "the state court's intention is not clear from the decree itself, then the Bankruptcy Court may 'look beyond the four

6

corners of the decree to the evidence before [the state] court ....'" *Nero*, 323 B.R. at 38, n.3 (*quoting In re Edwards*, 172 B.R. 505, 508 (Bankr. D. Conn. 1994)).

### The Divorce Decree

The Divorce Decree was entered following a two day trial and contains approximately 14 pages of factual findings. ECF No. 149. In the Divorce Decree and relevant to the discussion here, the Superior Court included two subsections titled "Alimony" and "Property Settlement" and found that the Debtor's ex-husband, possessed a pension account valued at $87,232.53. ECF No. 149, p. 12.

The "Alimony" subsection provides as follows:

> Based on the statutory factors, including the age, education, earnings, vocational skills and work experience of [ex-husband] and of [the Debtor,] a time limited award of alimony is appropriate. See, *Ippolito v. Ippolito*, 28 Conn. App. 745, cert. denied, 224 Conn. 905 (1992). "[T]he purpose of both periodic and lump sum alimony is to provide continuing support." *Dombrowski v. Noyes-Dombrowski*, 273 Conn. 127, 132, 869 A.2d 164 (2005). In making an award, the court has taken into consideration the division of the marital property pursuant to [Conn. Gen. Stat.] § 46b-81c.
> Based upon the facts of this case, and having considered all the statutory factors pursuant to General Statutes § 46b-82, [ex-husband] shall pay to [the Debtor] alimony in the amount of $200 per week plus 20% of the net of any cash bonus he receives, which sum shall be paid within five (5) business days of his receipt of the bonus for a period of twelve years from the date of the dissolution subject to earlier termination as set forth below.
> Alimony shall terminate on the earliest of the following: (i) the death of either party; (ii) the remarriage of [the Debtor]; (iii) twelve years from the date of dissolution; or (iv) [the Debtor's] co-habitation with an unrelated person pursuant to General Statutes § 46-86b.
> The term and the amount of the alimony shall be modifiable.
> No alimony is awarded to [ex-husband].

ECF No. 149, p. 23-24. No mention of the ex-husband's pension or any distributions of retirement savings owed to the Debtor is included in the Alimony subsection.

7

The separate subsection entitled "Division of Property" contains seven additional subsections, one of which is labeled "Retirement accounts." That section provides as follows:

> Due to her age and prior work history, it is unlikely [the Debtor] shall enjoy the opportunity to amass as much in the way of retirement funds as [ex-husband] may accumulate. Within sixty days from the date of this memorandum, [ex-husband] shall transfer to [the Debtor], 70% of his nonqualified deferred compensation, together or less any investment increment accrued after the date [the Debtor] obtained the valuation of the pension account as being $87,232.53. The transfer shall be effectuated by means of a Qualified Domestic Relations Order ("QDRO"), or other appropriate means, which shall be prepared by counsel for [the Debtor] and the parties shall equally share the reasonable cost thereof. The court shall retain jurisdiction to deal with any issues which may arise in connection with and to effectuate the transfer of the asset.

ECF No. 149, p. 27.

**Discussion**

Bankruptcy courts have weighed eight objective factors to "divin[e] the actual nature of an obligation imposed in a divorce decree: (1) the label given the obligation in the decree, (2) the form and placement of the obligation in the decree, (3) whether the obligation terminates on death, remarriage, etc., (4) the economic disparity between the parties, (5) the length of the marriage, (6) the presence of minor children, (7) the age, employability, and educational level of the parties, and (8) the financial resources, actual or potential, of each spouse." *Virgili*, 2012 WL 694318, at *12 (*quoting Nero*, 323 B.R. at 38). Consideration of these factors leads to the conclusion that the Retirement Fund Distribution was payment of a court-ordered property settlement, rather than a payment in the nature of alimony.

Factors 1 and 2 – "the label given the obligation in the decree," and "the form and placement of the obligation in the decree" – weigh heavily in favor of a conclusion that

8

the Retirement Fund Distribution, and therefore the IRA, was not alimony.  The Divorce Decree contains two separate sections, one labeled "Alimony" and one labeled "Division of Property."  Each of these sections contain detailed factual findings made by the Superior Court judge.  The Divorce Decree discusses the funds that become the Retirement Fund Distribution in the section labeled "Division of Property," along with a detailed distribution of other marital property.  ECF No. 149.  Likewise, the section of the Divorce Decree labeled "Alimony," contains detailed factual findings by the Superior Court judge, and an award of weekly payments to the Debtor subject to four limiting factors.  ECF No. 149. Both the "Division of Property" and "Alimony" sections of the Divorce Decree contain an analysis of the relevant legal factors required under Connecticut law.[8]  That considering Factors 1 and 2, that the Divorce Decree contains distinct sections, incorporates distinct factual findings, and applies distinct legal factors, weighs heavily in favor of a conclusion that the IRA is not alimony.  The court concludes that the only inference that can reasonably be drawn from the Divorce Decree, in consideration of Factors 1 and 2, is that the State Court intended to award the Debtor the IRA as a property settlement, and not alimony.

As to Factor 3 – "whether the obligation terminates on death, remarriage, etc." – the section of the Divorce Decree ordering ex-husband to pay the Retirement Fund Distribution that ultimately funded the IRA, contains no provision that ex-husband's obligation would terminate in the event of the Debtor's death or remarriage.  Because

---

[8]  Notably the Divorce Decree relies on different statutory provisions when discussing awards of Alimony and Division of Property.  ECF No. 149; *Compare* Conn. Gen. Stat. § 46b-82 "Alimony" (factors to be weighed when awarding Alimony), *with*, Conn. Gen. Stat. § 46b-81 "Assignment of property and transfer of property" (factors to consider when assigning property to divorcing spouses).  Although Conn. Gen. Stat. § 46b-82 permits the Superior Court, in awarding alimony, to consider the property awarded under Conn. Gen. Stat § 46b-81, consideration of the latter, when awarding the former, does not dissolve the distinction between alimony and a division of property.

the obligation to transfer the Retirement Fund Distribution is not terminable by death or remarriage suggests it is a property settlement, not alimony. *See Nero*, 323 B.R. at 39 ("Since the [obligation] does not terminate upon the death, remarriage, or other significant economic event in the life of the Plaintiff" weighs against a conclusion that an obligation is alimony). The transfer here bears the hallmarks of an equitable property settlement; a one-time transfer of property to equitably divide assets between divorcing spouses. *Blake v. Blake*, 211 Conn. 485, 497-98 (1989) (Connecticut "distinguishe[s] between the assignment of property under [Conn. Gen. Stat.] § 46b-81 and alimony under § 46b-82. The difference between an assignment of a specific portion of an estate and alimony is in their purposes. The purpose of property assignment is equitably to divide the ownership of the parties' property. On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support."), *overruled on other grounds*, *Ramin v. Ramin*, 281 Conn. 324 (2007). There is nothing in the Divorce Decree to suggest the section labeled "Retirement accounts," and that ordered ex-husband to turnover a portion of his pension to the Debtor, which she used in part to fund the IRA, was anything other than a property settlement.

Turning to Factors 4, 5, 6, 7 and 8, – "the economic disparity between the parties," "the length of the marriage," "the presence of minor children," "the age, employability, and educational level of the parties," and "the financial resources, actual or potential, of each spouse" – the court affords these factors no weight. There does not seem to be a serious factual dispute that there was an economic disparity between the Debtor and her ex-husband, the parties were married for approximately twenty years, and on the Petition Date the Debtor remained at a financial disadvantage

compared to her ex-husband. While this court is tasked with discerning the "actual nature" of an obligation, *Virgili*, 2012 WL 694318, at *12, the court notes that the Divorce Decree contains several pages of detailed factual findings by the Superior Court following a trial, many of which concern some of the same issues as Factors 4-8. It is clear that the Superior Court weighed and carefully considered these facts and circumstances in fashioning the Divorce Decree and awarding the Debtor both alimony and a property settlement. Had the Superior Court been less than thorough in its analysis, the court would then weigh these factors to divine the actual nature of the obligation. *See, Edwards*, 172 B.R. at 508. However, here, it is not for this court to recast the Superior Court's thorough remedy. Ultimately, the court affords Factors 4-8 no weight on the question of whether or not the IRA is or is not alimony because the Superior Court has already weighed these factors and incorporated them into its determination.

Factors 1, 2, and 3 all strongly weigh in favor of a conclusion that the IRA funds did not originate from an award of alimony, and the remaining factors are either inapplicable or inconclusive. The court therefore concludes that the Retirement Fund Distribution and the eventual IRA is not alimony for the purposes of § 522(d)(10)(D).

In conclusion, the Creditor has satisfied, by a preponderance of the evidence, that the Debtor's claim of exemption in the IRA under § 522(d)(10)(D) should be disallowed and her objection on this basis should be sustained. *Virgili*, 2012 WL 694318, at *11.

Having concluded that the IRA was not funded from an award of alimony and does not constitute alimony, the court addresses whether the Debtor is entitled to claim

11

an exemption in the IRA pursuant to § 522(d)(5).  In her Amended Schedule C, the Debtor claimed $9,251.18 of the IRA was exempt under § 522(d)(5), the "wild card" exemption.  ECF No. 32.  The Creditor objected to the Debtor's assertions of the exemption under § 522(d)(5).  ECF No. 82.  However, the Creditor has not established by a preponderance of the evidence that the Debtor's claim of exemption is improper, and Creditor's objection is therefore overruled.  *Virgili*, 2012 WL 694318, at *11.

Additionally, the court notes that in 2013 the Debtor had a right to establish or contribute to an individual retirement account.  In 2013, an individual's contributions to an IRA, provided she was over age 50, were limited to $6,500.00 per year.  *See,* I.R.S. Pub. 590 (2013) (Jan. 5, 2014) (available at https://www.irs.gov/pub/irs-pdf/p590.pdf); *see also,* ECF No. 149, p. 5 (the Debtor's age).  Accordingly, the Debtor is entitled to exempt $6,500.00 in the IRA, representing her maximum allowable contribution in 2013, under § 522(d)(12).

ACCORDINGLY, IT IS HEREBY

ORDERED, that, for the reasons stated, the Creditor's objection to the Debtor's claim of exemption in the IRA under 11 U.S.C. § 522(d)(10)(D), ECF No. 82, is SUSTAINED; and it is further

ORDERED, that, for the reasons stated, the Trustee's objection to the Debtor's claim of exemption in the IRA under 11 U.S.C. § 522(d)(10)(D), ECF No. 36, is SUSTAINED; and it is further

ORDERED, that, for the reasons stated, the Debtor's claim of exemption in the IRA under 11 U.S.C. § 522(d)(10)(D) is DISALLOWED; and it is further

ORDERED, that, for the reasons stated, the Debtor is entitled to claim exemptions in the IRA as follows: $9,251.18 under 11 U.S.C. § 522(d)(5); and $6,500.00 under 11 U.S.C. § 522(d)(12); and it is further

ORDERED, that, the court shall hold a status conference in the Main Case and the Adversary Proceeding to address the status of matters requiring further court resolution on <u>August 22, 2018 at 1:00 p.m.</u>

Dated this 3rd day of August, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut