**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No.: 13-22251 (AMN) |
| SHARON S. BRAINARD, | : | Chapter 7 |
| *Debtor* | : | |
| | : | |
| | : | |
| BONNIE C. MANGAN, | : | |
| CHAPTER 7 TRUSTEE, | : | |
| MCKEON LAW GROUP, LLC | : | |
| *Objecting Parties* | : | |
| v. | : | |
| SHARON S. BRAINARD, | : | |
| *Debtor* | : | |
| | : | Re: ECF No. 6, 14, 36, 44, 45, 82 |

## MEMORANDUM OF DECISION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPTIONS

*APPEARANCES*

Sharon S. Brainard                      *Debtor*
P.O. Box 1990                           *Proceeding Pro Se*
Vineyard Haven, Massachusetts 02568

Bonnie C. Mangan, Esq.                  *Bonnie C. Mangan*
The Law Office of Bonnie C. Mangan      *Chapter 7 Trustee*
1050 Sullivan Avenue, Suite A3
South Windsor, Connecticut 06074

Maria McKeon, Esq.                      *McKeon Law Group, LLC*
117 Senate Brook Drive                  *Counsel for Claimant*
Amston, Connecticut 06231

## I.    INTRODUCTION

This opinion determines whether and to what extent a debtor is entitled to claim an

exemption in funds held in an individual retirement account ("IRA") pursuant to 11 U.S.C.

1

§§ 522(d)(10)(E), (d)(11)(E), (d)(12), (b)(3)(C), and (b)(4).[1]  Prior to filing bankruptcy, the debtor, Sharon Brainard (the "debtor") established an IRA account using funds received following a divorce judgment from her now ex-husband's non-qualified pension plan. Mistakes were made when the IRA was established and the consequence of those mistakes is disputed.  After filing a voluntary Chapter 7 petition, the debtor claimed numerous exemptions in the IRA account pursuant to various provisions of Bankruptcy Code § 522.  The Chapter 7 Trustee, originally Thomas C. Boscarino, and now as successor Trustee, Bonnie C. Mangan ("Trustee") and a creditor, McKeon Law Group, LLC ("creditor"), objected to some or all of the exemptions.

Familiarity with the court's prior decisions is assumed. *See*, Memorandum of Decision and Order Sustaining, In Part, Objections to Claims of Exemption and Scheduling Status Conference, ECF No. 160; Order Granting Reconsideration and Vacating Court's Decision Regarding Debtor's Exemption Pursuant to 11 U.S.C. § 522(d)(12), ECF No. 189; and the Memorandum of Decision and Order After Trial Allowing Proof of Claim 1-2 In Part, as An Unsecured Claim, and Denying relief Sought In Counts 1, 2, and 3 of the Amended Complaint, ECF No. 433 (collectively, the "Prior Decisions").  As part of the Prior Decisions, the court sustained the objections to the debtor's exemption under Bankruptcy Code § 522(d)(10)(D) but allowed her exemption under Bankruptcy Code § 522(d)(5) in the amount of $9,251.18.  The Prior Decisions left unresolved the debtor's remaining exemptions pursuant to Bankruptcy Code §§

---

[1]      The Bankruptcy Code is found at Title 11, United States Code. Unless otherwise stated, references to code sections are to the Bankruptcy Code.  This Memorandum of Decision frequently references the Internal Revenue Code, Title 26, United States Code.  References to the Internal Revenue Code sections shall be referenced as "IRC § ____".

522(d)(10)(E), (d)(11)(E), (d)(12), (b)(3)(C), and (b)(4).  For the reasons that follow, the court sustained in part the objections to the debtor's claim of exemptions in the IRA.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter by virtue of 28 U.S.C. § 1334(b).  This court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984.  A proceeding determining objections to a debtor's claim of exemptions is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(matters concerning administration of the estate) and 157(2)(B)(allowance or disallowance of … exemptions from property of the estate).  This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## III.    PROCEDURAL HISTORY

On October 31, 2013, the debtor filed a voluntary Chapter 7 bankruptcy petition commencing the instant case ("Petition Date").  ECF No. 1.  In Schedule C – Property Claimed as Exempt, the debtor asserted an exemption in a funds held in a Fidelity Investments IRA account in the amount of $32,000 pursuant to Bankruptcy Code §§ 522(d)(10)(D), (d)(10)(E), (d)(11)(E), (d)(12), (b)(3)(C), and (b)(4)[2] and in the amount of $6,676.82 pursuant to Bankruptcy Code § 522(d)(5).  ECF No. 1, p. 13.  The Trustee and creditor objected.  ECF Nos. 6, 14.

---

[2]    Schedule C appears to contain a typographical error because the debtor claimed an exemption in the IRA under § 522(a)(3)(C) and § 522(a)(4), two nonexistent sections of the Bankruptcy Code. The court assumed – and the debtor concurred – the debtor is claiming her exemptions pursuant to § 522(b)(3)(C) and § 522(b)(4), rather than subsection (a) of § 522.

On December 23, 2013, the debtor amended her Schedule C increasing the Bankruptcy Code § 522(d)(5) exemption in the IRA to $9,251.18 (which I previously allowed), by reducing a separate exemption for some non-IRA funds.  ECF No. 32.  The Trustee and creditor renewed their objections.  ECF No. 36, 44, 45.  The court assumes the parties' familiarity with the remaining procedural history as set forth in the Prior Decisions.

During a status conference held on November 9, 2022, the debtor, Trustee, and creditor each agreed no further factual discovery was needed to resolve the remaining objections.  ECF No. 446 at 00:07:40 – 00:08:56, 00:13:50 – 00:16:08.[3]

## IV.    RELEVANT FACTUAL BACKGROUND

In 2013, the debtor was fifty-six years old.[4]  Prior to the Petition Date, on April 5, 2013, the state court entered a dissolution of divorce decree awarding the debtor seventy (70%) percent of her now ex-spouse's non-qualified pension plan valued at $87,232.53 with Lincoln Financial Group ("Lincoln"), which amounted to $62,362.12.[5]  On September 3, 2013, a Qualified Domestic Relations Order ("QDRO") was submitted to Lincoln and thereafter, Lincoln sent the debtor a check in the amount of $62,362.12 payable to the debtor ("Lincoln Funds").[6]  During trial, Linda Ursin was qualified as an expert witness as to the rollover of funds from qualified and non-qualified retirement plans.  She testified that when a payment is made from a non-qualified plan – whether by QDRO or otherwise – directly to a beneficiary, the funds are immediately taxable, without the ability to "roll

---

[3]        The court reviewed the audio file of the status conference using VLC Media Player.  All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited audio as follows: ECF No. ___ at hours:minutes:seconds.
[4]        ECF No. 149, p. 5.
[5]        ECF No. 364-48.
[6]        ECF No. 364-62; 364-56, p. 3; 364-75.

over" the funds to maintain any tax deferred status.  This is unlike a rollover of a qualified plan which preserves the tax deferred status of the funds.[7]

On September 30, 2013, the debtor deposited the Lincoln Funds in a newly opened checking account at People's United Bank.[8]  Four days later on October 4, 2013, the debtor opened and funded an IRA account with Fidelity Investments ("Fidelity") by transferring $40,000 of the Lincoln Funds from People's United Bank to Fidelity ("Fidelity IRA Account").[9]  In completing the paperwork to establish the Fidelity IRA Account, the debtor indicated the type of account to be opened was a "rollover IRA" and the funding of the account would be by check.[10]  Ms. Ursin opined this transaction would constitute an improper rollover of retirement funds because the Lincoln Funds came from a non-qualified plan and there is no opportunity for a direct rollover of non-qualified plan funds to a tax-exempt individual retirement account.[11]

Fidelity provides a disclosure statement regarding the Internal Revenue Code's requirements for IRA when a customer seeks to open such an account.[12]  Fidelity places the burden upon the customer – here, the debtor – to affirm the funds establishing a rollover IRA are funds qualified to constitute a rollover under the requirements of the Internal Revenue Code and does not independently verify or investigate the validity of the source of rollover funds.[13]

---

[7]      ECF No. 395, p. 194-195.
[8]      ECF No. 364-67, p. 2; ECF No. 364-75.
[9]      ECF No. 364-64.
[10]     ECF No. 364-64; ECF No. 395, p. 133, L. 4-10.
[11]     ECF No. 395, p. 200, 206.
[12]     ECF No. 395, p. 155; ECF No. 364-68.
[13]     ECF No. 395, pp. 148-149.

Pre-petition, on October 10, 2013, the Debtor withdrew $8,000 from the Fidelity IRA Account.[14]  The debtor also had a Cash Management Account at Fidelity, which operated like a checking account.[15]  The evidence suggests the $8,000 withdrawn from the Fidelity IRA Account, or a substantial amount of it, was deposited in the Cash Management Account.[16]  On October 31, 2013 (also, the Petition Date), the balance in the Fidelity IRA Account was $32,000.23 and the balance in the Cash Management Account was $3,473.82.[17]

After the Petition Date, on December 18, 2013, the debtor withdrew an additional $1,300 from the Fidelity IRA Account.[18]

### Tax Information in the Record

Although the issues here are highly dependent on whether the funds in the IRA Account were initially entitled to tax exempt status, or whether they retained any tax-exempt status as the intervening nine years elapsed, the record includes very little tax information to assist the court.  The tax information in the record here includes the following:

- 2013 Form 1099-MISC from Lincoln to the debtor reflecting a distribution of $62,362.12 to the debtor as "other income."[19]

- 2013 Form 1099-R from Fidelity to the debtor reflecting a distribution of $9,300 from the Fidelity IRA Account.[20]

- 2013 Form W-2 reflecting wages of $4,467.52 earned by the debtor in 2013.[21]

---

14    ECF No. 395, p. 158-159, 165; ECF No. 364-64, pp. 9, 11, 17.
15    ECF No. 364-64; ECF No. 395, p. 167, L. 7-13, p. 168, L. 3-9.
16    ECF No. 364, pp. 10, 11, 16.
17    ECF No. 395, p. 156, 172; ECF No. 364-64, p. 9.
18    ECF No. 364-65, p. 20; ECF No. 395, p. 179-180.
19    ECF No. 364-75; ECF No. 395, p. 211.
20    ECF No. 364-66; ECF No. 395, p. 208-210, 213-214.
21    ECF No. 364-75, p. 6.

6

- 2013 Form W-2 that is illegible as to the taxpayer/employee, reflecting $6,472.16.[22]

As part of her bankruptcy case, the debtor amended her Statement of Financial Affairs declaring under penalty of perjury that she earned income in 2013 from two sources: (1) $6,472.16 from wages from William Sonoma; and (2) $4,467.52 from wages from Allied Fiduciary Services.  ECF No. 67, p. 1.

## V.    APPLICABLE LAW

### *Property of the Bankruptcy Estate and Exemptions*

Generally speaking, the filing of a bankruptcy petition creates a bankruptcy estate encompassing, with few exceptions, "all legal or equitable interests of the debtor in property."   11 U.S.C. § 541(a)(1).   In order to facilitate a fresh financial start, the Bankruptcy Code permits debtors to exempt and retain certain property from the estate, thus removing the property from the estate to be divided among their creditors.  11 U.S.C. § 522(b)(1).  "[E]xemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'"   *In re Shaw*, 622 B.R. 569, 575 (Bankr.D.Conn. 2020)(*citing*, *Schwab v. Reilly*, 560 U.S. 770, 791 (2010)).   "Exemptions are 'not of property which would or might be exempt if some condition not performed were performed, but of property to which there is... a present right of exemption' on the date when the petition is filed."  *In re Lerbakken*, 949 F.3d 432, 436 (8th Cir. 2020)(*citing Myers v. Matley*, 318 U.S. 622, 626 (1943)).

Bankruptcy Code § 522(b)(2) contains what is commonly referred to as the "opt-out" provision and provides debtors with a choice between exempting property under federal law (§ 522(b)(2)) or state law (§ 522 (b)(3)), so long as the applicable state has

---

[22]    ECF No. 364-75, p. 9.

not "opted out" of the federal exemption scheme.  11 U.S.C. §§ 522(b)(1), (b)(2), (b)(3). Connecticut is not an "opt-out" state and a Connecticut debtor is allowed to exempt property under either Connecticut and federal non-bankruptcy law, or, by using the federal exemptions.  *In re Roncari*, 618 B.R. 667, 671 (Bankr.D.Conn. 2020)("Because Connecticut has not opted out of the federal exemptions, a debtor is permitted to claim as exempt either that property which is exempt under 11 U.S.C. § 522(d), or that property which is exempt under state law, however, the debtor is prohibited from claiming both federal and state exemptions.")(internal citations omitted).

In the absence of an objection, a debtor's claimed exemptions are presumptively valid.  11 U.S.C. § 522(l).  However, once an objection is filed, the objecting party bears the burden of proof to show by a preponderance of the evidence that the exemption is not properly claimed.  Fed.R.Bankr.P. 4003(c); *In re McGuire*, 20-61183, 2022 WL 2293923, at *3 (Bankr. N.D.N.Y. June 24, 2022).  A court determines whether a debtor is entitled to an exemption in property by focusing on the law and the facts as they exist on the petition date.  *See*, *Xiao v. Chorches*, 610 B.R. 183, 194 (D. Conn. 2019)("a debtor's exemptions are determined as of the time of the filing of his petition.").

### *Bankruptcy Code § 522(d)(10)(E)*

Bankruptcy Code § 522(d)(10)(E) permits a debtor to exempt the right to receive a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.  11 U.S.C. § 522(d)(10)(E).  While not relevant here, if the payment is on account of age or length of service and the plan or contract was established by an insider employing the debtor, the

plan or contract must also qualify under §§ 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code.  11 U.S.C. § 522(d)(10)(E); *see also*, 4 *Collier on Bankruptcy* ¶ 522.09 (Richard Levin & Henry J. Sommer eds., 16th 2023).

The Supreme Court in *Rousey v. Jacoway* concluded an IRA fell within the definition of a "similar plan or contract" within the meaning of Bankruptcy Code § 522(d)(10)(E) permitting the debtor to exempt the payment to the extent necessary for the debtor's support.  *Rousey v. Jacoway*, 544 U.S. 320, 326–27 (2005).  The Court concluded the ten (10%) percent penalty on early withdrawals was sufficiently substantial to make the payment "on account of" age.  *Rousey*, 544 U.S. at 328.  The Court noted the characteristic shared by all plans or contracts listed in § 522(d)(10)(E) was that they provide income as a substitute for wages during retirement and did not operate merely as a savings account.  *Rousey*, 544 U.S. at 332.  Because of the Internal Revenue Code's restrictions regarding pre-retirement access to funds, the Court concluded IRAs were akin to the plans and contracts provided for in § 522(d)(10)(E) and unlike a regular savings account.  *Rousey*, 544 U.S. at 333.

Shortly following *Rousey*, Congress enacted § 522(d)(12) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which provides an express exemption for an IRA (or other qualified plan) without a showing of age or necessity.  *See*, The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. No. 109–8, Title II, § 224(a)(2)(B), enacted April 20, 2005, added subsection (d)(12) to section 522; *see also, In re Wiggins*, 341 B.R. 506, 508 (M.D. Pa. 2006)(noting the issue of whether an IRA is exemptible will not remain a live one for long in light of BAPCPA).

### *Bankruptcy Code § 522(d)(12)*

Bankruptcy Code § 522(d)(12) provides, in relevant part, that a debtor may exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code on 1986."  11 U.S.C. § 522(d)(12).  Here, IRC § 408 is the relevant provision pertaining to IRAs.  For funds to be exempt, they must be (1) retirement funds; and (2) in an account exempt from taxation under IRC § 408.  *See, In re Seeling*, 471 B.R. 320, 322 (Bankr. D. Mass. 2012).  The term "retirement funds" is not defined in the Bankruptcy Code.  Courts have found however, that "the statutory language simply amounts to a description of money set apart for retirement."  *In re Seeling*, 471 B.R. at 322 (the Bankruptcy Code does not require forensic analysis in order to determine from where [the] funds arose.).

In addition, the requirements of Bankruptcy Code § 522(b)(4) are applicable to exemptions under § 522(d)(12).  11 U.S.C. § 522(b)(4).  Bankruptcy Code § 522(b)(4) provides a presumption that funds in an account described in § 522(d)(12) are exempt if the account has received a favorable determination under IRC § 7805 and such determination is in effect on the petition date. 11 U.S.C. § 522(b)(4).  If the presumption does not arise, the debtor must show no prior contrary determination has been made by a court or the Internal Revenue Service and, either (1) the account is in a substantial compliance with the requirements of the Internal Revenue Code, or (2) the debtor is not materially responsible for that failure.  11 U.S.C. § 522(b)(4); *see also, In re Jie Xiao*, 592 B.R. 258, 265–66 (Bankr. D. Conn. 2018), *aff'd sub nom. Xiao v. Chorches*, 610 B.R. 183 (D. Conn. 2019).

### *Bankruptcy Code § 522(d)(11)(E)*

Bankruptcy Code § 522(d)(11)(E) permits an exemption for a "debtor's right to receive or property that is traceable to ... a payment in compensation of loss of future earnings of the debtor ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." "The entire tenor of § 522(d)(11) relates to tort compensation, *i.e.*, crime victim's reparation, life insurance payments, bodily injury and loss of future earnings … Therefore, section 522(d)(11) is most reasonably interpreted as applying to general tort-related awards." *Bankruptcy Exemption Manual*, Brown, Ahern, MacLean, § 5:12: Section 522(d)(11)—Injury and other loss exemptions, (2022).  Courts have expanded the reach of the § 522(d)(11)(E) exemption for compensation for lost future earnings beyond tort recoveries to also encompass recoveries based on worker compensation awards or resulting from a wrongful act such as retaliatory discharge, breach of contract.  *See, In re Jackson,* 593 F.3d 171 (2d Cir. 2010) (exemption allowed only for amount of settlement of wrongful termination suit that was reasonably necessary for support of the debtors, with the court also holding that the statute only exempts loss of earnings from the date of the bankruptcy filing); *In re Nuara*, 607 B.R. 116, 128 (Bankr. E.D.N.Y. 2019)("This Court would comfortably find that a workers' compensation payment received as a lump sum prepetition can qualify for the exemption permitted under § 522(d)(11)(E)"); *In re Arellano*, 524 B.R. 615, 621 (Bankr. M.D. Pa. 2015) (concluding "that 11 U.S.C. § 522(d)(11)(E) provides a basis upon which property traceable to a pre-petition lump sum workers' compensation settlement awarded for the loss of future earnings); *In re John*, 459 B.R. 684, 689 (Bankr. E.D. Mich. 2011) (employee buyout from Chrysler was exempt under 11 U.S.C. § 522(d)(11)(E), relying on *In re Lewis*, 387 Fed.

Appx. 530 (6th Cir. 2010) (dealing with employee buyout from Ford were for 'in compensation of loss of future earnings' within the unambiguous meaning of § 522(d)(11)(E) since the ex-employee waived all of her rights to all future earnings from Ford).

### *Internal Revenue Code § 408*

Congress enacted § 408(a) of the Internal Revenue Code, providing for the creation of IRAs, as part of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. 93–406, 88 Stat. 829.  The "goal of Congress was to create a system whereby employees not covered by qualified retirement plans would have the opportunity to set aside at least some retirement savings on a tax-sheltered basis."  *Campbell v. Comm'r*, 108 T.C. 54, 62–63, 1997 WL 65944 (1997)(*citing* H. Rept. 93–807 (1974), 1974–3 C.B. (Supp.) 236, 361; S. Rept. 93–383 (1973), 1974–3 C.B. (Supp.) 80, 210).  An individual retirement account means "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust" meets certain enumerated requirements.  26 U.S.C. § 408(a).  IRC § 408(a) sets out six initial requirements that a trust account must meet to qualify for IRA status.  26 U.S.C. § 408(a).  The first requirement – and the one relevant to the case here – provides

> (1) Except in the case of a rollover contribution described in subsection (d)(3) or in section 402(c), 403(a)(4), 403(b)(8), or 457(e)(16), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).
> 26 U.S.C. § 408.

In 2013 (here, the relevant year), if an individual had reached age 50 or older before 2014 (here, the relevant age of the debtor), the most that could be contributed to an IRA was

the lesser of $6,500, or the individual's taxable compensation for the year.  *See*, Individual Retirement Arrangements, (IRAs), Department of the Treasury, Internal Revenue Service, Publication 590 (2013) ("IRS Publication 590"); 2013 WL 6921554. Compensation is a term defined to mean "earned income."  26 U.S.C. § 219(f)(1).

If IRC § 408(a) requirements are met, a qualifying account is treated as tax exempt under IRC § 408(e)(1).  *See, In re Moore*, 640 B.R. 397, 403 (Bankr. S.D. Ohio 2022)("Qualifying accounts are then treated as tax exempt under IRC § 408(e)(1)").  As explained by the Tax Court, a qualifying IRA account provides a taxpayer with income tax benefits.

> As long as the account qualifies as an IRA, the taxpayer-investor is not liable for income tax on the gains, so that the undiminished investment account can earn maximum returns until the time comes for payout, when the taxpayer will finally owe income tax on those greater gains.... the benefit of the traditional IRA is thus deferral of income tax liability on retirement investment gains.
> *Peek v. Comm'r*, 140 T.C. 216, 223 (2013).

As the Eleventh Circuit Court of Appeals noted, "[t]he upshot is that an IRA is only tax exempt in the first place if it satisfies 'a number of requirements imposed by the Internal Revenue Code.'"  *In re Yerian*, 927 F.3d 1223, 1227–28 (11th Cir. 2019)(*citing, Rousey*, 544 U.S. at 322).

Amounts contributed to an IRA exceeding the yearly statutory limit are termed "excess contributions."  26 U.S.C. § 4973(b).  According to the IRS, an "excess contribution could be the result of your contribution, your spouse's contribution, your employer's contribution, or an improper rollover contribution."  IRS Publication 590, p. 53; 2013 WL 6921554.  Excess contributions must be reported to the IRS using Form 5329. *Id.*, p. 62; *see also*, *Paschall v. C.I.R.*, 137 T.C. 8, 21 (Tax 2011).

13

If excess contributions are not withdrawn before the date of the tax return for the year in which the contribution was made is due (here, April 2014), they are subject to an excise tax in the amount of six (6%) percent for each year the excess funds remain in the IRA account. *Id.*, p. 53; 26 U.S.C. § 4973(a)(1). "The excise tax is imposed each year until the excess contribution plus earnings is eliminated." *Paschall*, 137 T.C. at 18. There is no good faith exception to the excise tax for excess contributions. *Allison v. I.R.S.*, 3:10CV1741 RNC, 2012 WL 1657013, at *2 (D. Conn. Mar. 1, 2012), *report and recommendation adopted*, 3:10-CV-01741 RNC, 2012 WL 1416144 (D. Conn. Mar. 30, 2012)("Although Congress considered making an exception for good faith error when drafting § 4973, the statute as enacted does not distinguish between excess contributions made willfully or inadvertently."); *see also, Johnson v. Comm'r*, 661 F.2d 53, 55 (5th Cir.1981); *Orzechowski v. Comm'r*, 69 T.C. 750, 755–57 (1978).

Section 6501 of the Internal Revenue Code provides the IRS with three (3) years to assess unpaid taxes and unfiled forms, but also provides that where a taxpayer fails to file a return, the tax may be assessed "at any time." 26 U.S.C. §§ 6501(a), (c)(3). In addition, IRC § 6651 may impose additional penalties for failing to file a return or pay a tax. 26 U.S.C. § 6651; *Paschall*, 137 T.C. at 31 ("Form 5329 is a tax return within the meaning of section 6011, and failure to file Form 5329 can result in section 6651 additions to tax.").

Because funds contributed in excess of the yearly limit are not exempt from taxation under § 408(a), they cannot be exempted by a bankruptcy debtor under § 522(d)(12). *See In re Farber*, 21-12147 (PMM), 2022 WL 1230547, at *9 (Bankr. E.D. Pa. Apr. 26, 2022)(acknowledging the account could have been tax exempt up to the

statutory contribution limit of $6,500 but disallowing any tax-exempt status to the account when the debtor had subsequently made withdrawals exceeding that amount); *In re Smith*, 570 B.R. 844, 853 (Bankr. D. Idaho 2017)(Because the deposit in the IRA both exceeded the IRC contribution limit for 2016, and did not constitute a proper rollover contribution, Debtors' deposits in the IRA are not a pension, annuity, or retirement allowance accrued under a plan described in § 408 of the IRC as required for an exemption); *In re Cherwenka*, 508 B.R. 228, 241 (Bankr.N.D.Ga. 2014)(holding that annuity disqualified from tax exempt status where Debtor's 2003 contributions in the amount of $250,000.00 and $100,000.00 greatly exceed the statutorily prescribed limit of $3,000.00); *In re Ludwig*, 345 B.R. 310, 317 (Bankr.D.Colo.2006)(disallowing debtor's claimed annuity exemption because, in part, the annuity exceeded the annual contribution limit); and *In re Rogers*, 222 B.R. 348, 350 (Bankr.S.D.Cal.1998) (holding that lump sum premium payment for debtor's annuity contract "far exceeded" former $2,000.00 limit).

### *IRA Rollover Contributions*

The contribution limit for IRA deposits does not apply to rollover contributions as described in IRC § 408(d)(3).  26 U.S.C. § 408(a)(1) (establishing deposit limits "except in the case of a rollover contribution").  A rollover contribution can be "any amount."  26 U.S.C. § 408(d)(3)(A).  A "rollover" is a tax-free distribution of cash or other assets by the account owner from one qualified retirement plan to another qualified plan.  *See*, IRS Publication 590, at 20.  Distributions from pension plans, profit-sharing plans, annuity plans, individual retirement accounts, and individual retirement annuities may qualify for a tax-free rollover if the plans meet the definitions set out in the Internal Revenue Code. 26 IRC §§ 402(c)(4),3 403(a)(4), 403(b)(8), 408(d)(3)(A); *see also, Sadberry v. C.I.R.*,

153 Fed. Appx. 336, 338–39 (5th Cir. 2005)(summary order).  In summary terms, a qualified rollover allows a taxpayer to take funds from one retirement account (like a pension plan or profit-sharing plan qualified under IRC § 401(a)) and transfer that money to another retirement account (like an IRA under IRC § 408) without incurring any immediate tax consequences.  Retirement funds from a tax-exempt qualified employee plan retain their tax-exempt status when rolled over into a tax-exempt IRA.  "An IRA is not tax-exempt, however … if the funds in the IRA were transferred from a non-qualified plan." *See In re Richey*, ADV 06-00524-GBN, 2011 WL 4485900, at \*9 (Bankr. App. 9th Cir. Aug. 8, 2011); *Baetens v. Comm'r of Internal Revenue*, 777 F.2d 1160, 1167 (6th Cir.1985); *In re Banderas*, 236 B.R. 837, 840 (Bankr.M.D.Fla.1998). Under the Internal Revenue Code, IRA funds rolled over from a non-qualified account retain non-qualified status.  *In re Richey*, 2011 WL 4485900, at \*9.

## VI.    DISCUSSION

### *Posture of the Present Dispute and Bankruptcy Code § 522(d)(12) Exemption*

Thus far, particularly with the lengthy litigation background to the Prior Decisions and this Memorandum of Decision, it is clear the parties have tried to grapple with the landscape of tax and bankruptcy law without resolving their disputes.  Prior to the Petition Date, the debtor established the Fidelity IRA Account by depositing a check from a People's United Bank checking account containing only proceeds of a "non-qualified" plan under ERISA.  This transfer did not – and could not – preserve the funds' tax-exempt nature, because it is undisputed the funds were "non-qualified" under ERISA and thus were not tax exempt.  The initial $40,000 deposit establishing the Fidelity IRA Account far exceeded any statutory contribution limit for individuals, because the limit in 2013 for an

16

individual with the tax and earning attributes of the debtor was $6,500.  IRC § 219(b).  At most, $6,500 of the Fidelity IRA Account as it existed on the Petition Date may be tax exempt.[23]

The debtor's reliance on principles of tax exempt status for rollovers discussed in *In re Ecle Kees*, BR 16-62660-TMR7, 2018 WL 1226011, at *1 (Bankr.D.Or. Mar. 8, 2018) is misplaced.  In *In re Ecle Kees*, the former husband's retirement accounts were clearly tax qualified, while here the debtor's ex-spouse's retirement account was a non-qualified plan.  This factual distinction is critical to the analysis.  In *In re Ecle Kees* the court relied on a divorce agreement to determine a transfer of an individual's interest in a qualified IRA to his or her former spouse under a divorce or separation agreement is not a taxable event to the individual making the transfer pursuant to IRC § 408(d)(6).  But here, IRC § 408(d)(6) is inapplicable because the funds were not transferred from a qualifying account.  The court cannot disregard what actually occurred (*i.e.,* a distribution to her from a non-qualified account and the creation of an IRA funded in excess of the statutory limit), in favor of what the debtor believes would be a more equitable result.

If the debtor wanted to create an individual retirement account with these non-qualified funds, she was required to follow the requirements of IRC § 408(a) and was limited to $6,500.  In the Amended Statement of Financial Affairs, the debtor reported income from wages totaling $10,939.67.  Thus, in the absence of any other evidence in the record regarding income from wages during 2013, the debtor was entitled to establish an IRA account in the maximum amount of $6,500.

---

[23]     On the Petition Date, the IRA Account balance was approximately $32,000, because the debtor withdrew $8,000 from it between the date it was established and October 31, 2013.

On the Petition Date, the Fidelity IRA Account held excess contributions totaling approximately $25,500 ($32,000 - $6,500 = $25,500).  Because the debtor withdrew $1,300 from the Fidelity IRA Account after the Petition Date and before December 31, 2013, the excess contributions at year-end totaled approximately $24,200.[24]  The excess contributions were not and are not now tax-exempt under IRC § 408(a) and cannot be exempted in the bankruptcy case by using § 522(d)(12).

The result proposed by the creditor – that any exemption pursuant to § 522(d)(12) be disallowed – is unwarranted.  The creditor argues that because the Fidelity IRA Account was set up as a rollover account under IRC § 408(d), there is no basis for the court to conclude the Fidelity IRA Account (in any amount) satisfies IRC § 408(a) for the creation of a (non-rollover) individual retirement account.  The creditor provides no authority for the position that $6,500 of the funds (the 2013 yearly contribution limit) could not qualify under IRC § 408(a) and the argument is otherwise unpersuasive.  A review of the caselaw addressing situations where an individual has attempted to roll a non-qualifying plan into an IRA suggests the entire account need not be disqualified but rather the amounts over the yearly contribution limit are treated as excess contributions.  *See*, *Martin v. C.I.R.*, 67 T.C.M. (CCH) 2960 (Tax 1994); *Michel v. C.I.R.*, 58 T.C.M. (CCH) 1019 (Tax 1989).

This makes sense because the Internal Revenue Code provides a mechanism for addressing excess contributions allowing individuals to either, (1) remove excess contributions before the tax filing deadline in the year the excess contribution was made; or (2) to report the excess contribution and pay penalties associated with the excess

---

[24]     The circumstances regarding the post-petition withdrawal are detailed in the Prior Decisions.

contribution. *See*, 26 U.S.C. §§ 408(d)(4), 4973(a), (b). Adopting the creditor's position ignores the statutory provisions and well-developed caselaw addressing this issue. In contrast to the creditor's position, the court concludes the debtor was entitled to contribute $6,500 to a Fidelity IRA Account in 2013.

The Trustee admits the debtor could have funded an IRA for up to $6,500 from her earnings in 2013. But the Trustee asserts the debtor is not entitled to an exemption under § 522(d)(12) because the specific dollars used to fund the Fidelity IRA Account were not the same dollars the debtor earned in 2013. The Trustee's argument assumes the source of funds contributed to an IRA is determinative for purposes of Bankruptcy Code § 522(d)(12). In support, the Trustee cited to *In re Kizer*, 539 B.R. 316 (Bankr. E.D. Mich. 2015 2015) and *In re Lerbakken*, 590 B.R. 895 (B.A.P. 8th Cir. 2018)(*"Lerbakken I"*). The court is unpersuaded that § 522(d)(12) requires a forensic analysis of the source of the funds used to establish an IRA. One requirement for an exemption under Bankruptcy Code § 522(b)(12) is that the funds constitute retirement funds – "sums of money set aside for the day an individual stops working." *Clark v. Rameker*, 573 U.S. 122, 127 (2014).[25] The inquiry is not subjective, rather a court is to evaluate "the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working." *Clark*, 573 U.S. at 127. The Supreme Court enumerated three factors to aid in this evaluation:

1) Whether the debtor may invest addition money in the account received;
2) Whether the debtor is required to withdraw money from the account at issue or be any particular time sooner than retirement age; and

---

[25]    In *Clark*, the Supreme Court evaluated whether a debtor could claim an exemption in funds held in an inherited IRA account and noted the functional and structural differences between inherited and non-inherited IRAs, one being for current consumption and the other for saving for retirement. *Clark*, 573 U.S. at 126.

3) Whether the debtor may withdraw the entire balance of the account at any time for any purpose without penalty.

*Clark*, 573 U.S. at 128 ("*Clark* Factors").

The Fidelity IRA Account here satisfies all three of the *Clark* Factors.  The debtor could contribute more money each year up to the limits prescribed by IRC § 219 to the Fidelity IRA Account, there was no requirement to withdraw the funds in the Fidelity IRA Account before retirement and withdrawing the entire balance of the account at any time would subject the debtor to penalties.

The Trustee's reliance on the *In re Kizer* case is misplaced.  In that case, the funds were not held in an individual retirement account established by the debtor but rather in alternative payee accounts containing restrictions on use similar to inherited IRA accounts.  *In re Kizer*, 539 B.R. at 326.  Similarly, *Lerbakken I* is distinguishable to the facts here and it's reading of the Supreme Court's decision in *Clark* too broad.  There, the debtor had not taken any steps to receive the funds awarded pursuant to a divorce judgment: no qualified domestic relations order had been submitted and the funds remained in the debtor's ex-spouse's retirement accounts.  The *Lerbakken I* decision interpreted *Clark* as requiring the funds be created or contributed by the individual claiming the exemption – but that reading expands the holding of *Clark*.  The Supreme Court in *Clark* directed courts to examine the characteristics of the account holding the funds – not the source of the funds.  *In re Lerbakken*, 590 B.R. at 897.  Subsequently, the Eighth Circuit Court of Appeals affirmed *Lerbakken I* without relying on a *per se* prohibition against the source of funds being from something other than earnings.  *In re Lerbakken*, 949 F.3d 432 (8th Cir. 2020)("*Lerbakken II*").  Rather, the *Lerbakken II* court analyzed the funds in light of the three objective characteristics identified in *Clark* and noted the

20

debtor's interest in the funds from his former spouse's IRA as of the petition date was conditioned upon either his former spouse's IRA being renamed or the funds being transferred into an IRA under his name, and no means for either option to occur was ever created.  *In re Lerbakken*, 949 F.3d. at 43.

On the Petition Date here, the funds were held in a Fidelity IRA Account established by the debtor.   The court agrees with the line of cases analyzing the characteristics of the account in which the funds are held on the petition date without regard to the source of the funds to determine whether the funds are retirement funds. S*ee, In re Kelly*, BR 22-00089, 2023 WL 2903988, at *2 (Bankr. N.D. Iowa Apr. 11, 2023)(concluding funds inherited from late spouse but rolled over into debtor's own IRA before the petition date qualify for exemption because the funds in debtor's accounts were subject to the same tax and bankruptcy rules as would apply to funds that Debtor had contributed herself.); *see also, In re Chaudury*, 581 B.R. 279, 287 (Bankr. M.D. Tenn. 2018)(in the context of a proper rollover to maintain tax exempt status of funds, the court concluded the "applicable law simply does not support the proposition that the same money that came out of the IRA has to be used for the "rollover" into an IRA within the 60–day rule."); *In re Cutignola*, 450 B.R. 445, 450 (Bankr. S.D.N.Y. 2011)(court considers whether a debtor may exempt retirement funds inherited from a spouse, post-petition, and holds that he may exempt the funds).   Here, as noted, the Fidelity IRA Account satisfies the *Clark* Factors, and the court is unpersuaded Bankruptcy Code § 522(d)(12) requires a forensic analysis as to source of the specific dollars used to fund the Fidelity IRA Account.

The objections to the debtor's exemption in the Fidelity IRA Account are overruled to the extent of $6,500 plus earnings on that amount, and, are otherwise sustained.  For the absence of doubt, the debtor is entitled to an exemption in the Fidelity IRA Account pursuant to § 522(d)(12), but only to the extent of $6,500 plus earnings on that amount.

### *The Validity of the Debtor's Claim to an Exemption Under § 522(d)(10)(E)*

The debtor is not entitled to any additional exemption in the Fidelity IRA Account under § 522(d)(10)(E).  As noted, the Bankruptcy Code was amended to include § 522(d)(12), which more specifically addresses the right to an exemption in IRA funds.  Before the amendment adding § 522(d)(12), courts and commentators referenced certain provisions of § 522(d)(10)(E) when addressing individual retirement accounts.  Here, § 522(d)(10)(E) need not apply since the same result is reached through application of § 522(d)(12).  Here, considering how § 522(d)(10)(E) might apply to the facts here, it is clear there is no basis to conclude any additional funds held in the Fidelity IRA Account are exempt under that section.  The objections to the debtor's claim of exemption under § 522(d)(10)(E) are sustained.

### *The Validity of the Debtor's Claim to an Exemption Under § 522(d)(11)(E)*

The debtor claims an exemption in the Fidelity IRA Account under § 522(d)(11)(E) because the funds originate from her divorce judgment that awarded her 70% of her now ex-spouse's non-qualified plan. The debtor argues the funds are exempt under this provision on theory the funds are payments by her ex-spouse to compensate the debtor for her loss of future income.  This argument is unpersuasive.  The debtor's interest stems from a divorce court judgment that divided marital assets but did not determine damages for the loss of future earnings.  As noted, the exemptions available under § 522(d)(11)(E)

involve discrete payments to compensate a debtor for the loss of future earnings resulting generally from tort-related injuries, worker's compensation, or employment related awards, agreements, and judgments.  The debtor has not cited, and the court has not independently found, authority supporting the idea that funds resulting from the division of property of a divorce judgment fall within the exemption of § 522(d)(11)(E).  Accordingly, the objections to this claim of exemption under § 522(d)(11)(E) are sustained.

### *Exemptions Pursuant to Bankruptcy Code §§ 522(b)(3)(C) and (b)(4)*

The Scheduling Order noted the objections to the debtor's claim of exemptions pursuant to Bankruptcy Code §§ 522(b)(3)(C) and (b)(4) appeared well-founded.  ECF No. 448, p. 2.  Sections 522(b)(3)(C) and (b)(4) apply to protect retirement funds in a similar fashion to § 522(d)(12) when a debtor has chosen to use state exemptions, or their state has opted out of the federal exemptions.  4 *Collier on Bankruptcy* ¶ 522.10 (Richard Levin & Henry J. Sommer eds., 16th ed 2023)("retirement funds may be exempted under section 522(b)(3)(C) in the same manner that such funds are exempt under section 522(d)(12)").  Here, the debtor claimed federal exemptions in the Fidelity IRA Account and as to her other property.  Debtors are prohibited from selecting a mix of both federal and state exemptions.  *See*, *In re Roncari*, 618 B.R. 667, 671 (Bankr. D. Conn. 2020).  For the absence of doubt and clarity of the record, because the debtor chose federal exemptions, she cannot also use state exemptions.  To the extent §§ 522(b)(C)(3) and (b)(4) are not precluded because of the debtor's election of federal exemptions, the result does not change because § 522(b)(3)(C) is treated in the same fashion as § 522(d)(12) and the court's conclusions regarding the exemption in the IRA

account pursuant to § 522(d)(12) applies equally here. Accordingly, the debtor's exemptions under Bankruptcy Code §§ 522(b)(3)(C) and (b)(4) are disallowed.

### Exemption Pursuant to Bankruptcy Code § 522(d)(5)

Previously, the court overruled the creditor's objection to the debtor's claim of exemption under Bankruptcy Code § 522(d)(5) concluding the debtor was entitled to an exemption in the amount of $9,251.18 in the Fidelity IRA Account. *See*, ECF No. 160, p. 12. The total exemption is not disputed by the Trustee. However, the Trustee asks the court to reduce the debtor's exemption under § 522(d)(5) by the debtor's post-petition withdrawal of $1,300. ECF No. 452. While it may be semantics, the court does not find there is a basis *to reduce* the exemption, as much as there is a basis to conclude any exemption should *be applied* to the funds withdrawn. Hence, the debtor is entitled to an exemption under § 522(d)(5) to the funds held in the Fidelity IRA Account on the Petition Date totaling $9,251.18. The exemption previously allowed under § 522(d)(5) is in addition to the exemption allowed under § 522(d)(12).

### VII.    CONCLUSION

For the reasons stated in this Memorandum of Decision, the debtor is allowed an exemption in the funds held in the Fidelity IRA Account on the Petition Date pursuant to Bankruptcy Code § 522(d)(5) in the amount of $9,251.18 plus earnings, and § 522(d)(12) in the amount of $6,500.00 plus earnings. The remaining objections to the debtor's exemptions in the Fidelity IRA Account are sustained.

All other arguments have been considered and found to be without merit. **The time within which a party may file an appeal of a final order of the bankruptcy court**

**is fourteen (14) days after it is entered on the docket.** *See***, Fed.R.Bankr.P. 8002(a)(1).** Accordingly, it is hereby

ORDERED: The Trustee's and creditor's objections to the debtor's exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(10)(E) are SUSTAINED, and the exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(10)(E) is DISALLOWED; and it is further

ORDERED: The Trustee's and creditor's objections to the debtor's exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(11)(E) are SUSTAINED, and the exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(11)(E) is DISALLOWED; and it is further

ORDERED: The Trustee's and creditor's objections to the debtor's exemptions in the Fidelity IRA Account pursuant to Bankruptcy Code §§ 522(b)(3)(C) and (b)(4) are SUSTAINED and the exemptions in the Fidelity IRA Account pursuant to Bankruptcy Code §§ 522(b)(3)(C) and (b)(4) are DISALLOWED; and it is further

ORDERED: The Trustee's and creditor's objections to the debtor's claims of exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(12) are OVERRULED IN PART and SUSTAINED IN PART, and the exemption in the Fidelity IRA Account pursuant to Bankruptcy Code § 522(d)(12) is ALLOWED IN PART to the extent of $6,500.00 plus earnings, only; and it is further

ORDERED: The debtor's allowed exemption pursuant to Bankruptcy Code § 522(d)(5) may be applied by the debtor, at her option to the $1,300.00 withdrawn from the Fidelity IRA Account; and it is further

ORDERED: The Trustee may file a motion seeking turnover of property of the bankruptcy estate pursuant to Bankruptcy Code §§ 542, 543, as applicable, on or before June 16, 2023.

Dated this 25th day of May, 2023, at New Haven, Connecticut.

Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut